UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
APS TECHNOLOGY, INC.,

        Plaintiff,

    -v-                                    No.  13CV6500-LTS-KNF

BRANT OILFIELD MANAGEMENT &
SALES, INC.,

        Defendant.
--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff APS Technology, Inc. ("APS" or "Plaintiff") has brought this action

against Defendant Brant Oilfield Management & Sales, Inc. ("Brant" or "Defendant"), seeking

damages stemming from Brant's failure to make payments allegedly due under a contract for the

purchase of oil and gas drilling equipment and related engineering services.  Brant has asserted,

as affirmative defenses and/or counterclaims, that its payment obligation has been discharged by

reason of APS' breach of the contract, and that APS has breached various provisions of the

contract, breached express and implied warranties, and negligently designed and manufactured

the subject equipment.  Brant also asserts that APS' contractual warranty limitations are

unconscionable and that the warranties failed of their essential purpose.  Brant seeks

compensatory and consequential money damages.  (<u>See</u> Docket Entry No. 35.)  The Court has

jurisdiction of this action pursuant to 28 U.S.C. § 1332.

APS moves for summary judgment pursuant to Federal Rule of Civil Procedure

56(a), seeking judgment on all of its claims and dismissal of Brant's affirmative defenses and

counterclaims. The Court has carefully considered the parties' submissions.  For the reasons set

forth below, the Court grants APS' motion for summary judgment in its entirety.

BACKGROUND[1]

APS is a Connecticut-based company that specializes in the development, marketing and sale of devices and systems used in connection with the drilling of oil and gas wells.  (See Compl. ¶¶ 2, 7; Answer ¶¶ 2, 7.)  Brant is a Texas-based corporation that provides oil and gas services.  (See Compl. ¶ 3; Answer ¶¶ 3, 87.)  In August 2011, the parties entered into a Master Purchase Agreement ("MPA") which provided that Brant would purchase certain goods and services from APS.  (See Pl. 56.1 St. ¶¶ 1(b), 3.)  The MPA contained a one-year limited warranty against defects in workmanship and materials, disclaimed all other warranties, and limited Brant's remedies to repair, replacement or refund of the purchase price of the equipment.  (Id. ¶¶ 20, 42-43, 61.)  The MPA also included provisions disclaiming liability on the part of APS for any customs issues that should arise, as well as liability for any consequential damages.  (Id. ¶¶ 41, 63.)  Customs clearance was to be solely Brant's responsibility, and the MPA contained no requirements regarding the content of shipping documents or the way they were to be packaged with goods for purposes of international shipment.  (Id. ¶¶ 38-41.)

On August 2, 2011, Craig Brown, APS' Vice President, Western Region, sent the MPA to D. Hal Hubbard ("Hubbard"), Brant's President and Executive Director.  (Id. ¶ 18.)  The MPA was sent in Microsoft Word format and the document was protected so that the "track changes" function could not be turned off.  (Id. ¶ 18.)  Brant, however, modified the document

---

[1]    Facts recited are drawn primarily from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.  For reasons explained in the Discussion section infra, APS' factual statements are taken as undisputed for the purposes of the instant motion practice.  Additional facts drawn from the Complaint in this action ("Compl.," Docket Entry No. 1), have been admitted by Defendant Brant in its First Amended Answer and Counterclaims ("Answer," Docket Entry No. 35).

without tracking the changes.  (Pl. 56.1 St. ¶ 21.)  In so doing, Brant deleted words from the warranty disclaimers and remedy limitations in a manner designed to vitiate these disclaimers and limitations.  (See id. ¶¶ 21-24.)  Brant did not disclose these changes to APS, and APS did not become aware of the changes until Brant later filed suit against APS in the Southern District of Texas.  (Id. ¶¶ 25-29.)

On or about November 1, 2012, Brant purchased equipment from APS pursuant to the terms of the MPA for $4,149,610.12, paying approximately $1.5 million of the purchase price up front.  (Id. ¶¶ 1(g), 5.)  Brant requested that APS finance the remaining amount owed and, pursuant to this request, the parties executed a financing addendum (the "Addendum") to the MPA, under which APS agreed to finance the approximately $2.65 million remaining on the purchase price.  (Id. ¶¶ 8-9.)  Brant was to pay this balance back in 12 monthly installment payments.  (Id. ¶ 10.)  APS delivered the equipment in separate shipments in or about late November and December 2012.  (Id. ¶ 11.)  The equipment arrived at Brant's freight transporter to Venezuela on December 5, 2011, well within the time parameters set out by the MPA, which contained no "time of essence" clause.  (See id. ¶ 35.)  Brant then transferred the equipment to Optidrill S.A., a Venezuela corporation principally owned by Hubbard.  (Id. ¶¶ 12-13.)  Brant first sold the equipment to Hubbard himself in Venezuela before ultimately transferring it to Optidrill.  (Id. ¶ 14.)[2]

In January 2013, the parties executed an amendment (the "Amendment") to the Addendum, which reduced the purchase price of the equipment to $4,085,324.30 and reduced the monthly installment payments.  (Compl. ¶¶ 18-19; Answer ¶¶ 18-19.)  Separate provisions of

---

[2]   Brant asserts in its Rule 56.1 Statement that it sustained a $500,000 fine associated with the shipment of equipment to Venezuela, but provides no citations to any underlying evidence to substantiate this claim.  (See Def. 56.1 St. ¶ 6.)

the Amendment allowed APS to accelerate the entire indebtedness if Brant failed to make timely installment payments, and to recoup its attorneys' fees and costs incurred if it were forced to take legal action in the event of a default by Brant.  (Compl. ¶¶ 20-21; Answer ¶¶ 20-21.)

APS was notified in April 2013 of a problem with a wave propagation resensitivity sub ("WPR") that it had supplied to Brant.  (Pl. 56.1 St. ¶ 45.)  In accordance with the MPA, APS issued a return material authorization on April 9, 2013, and notified its Houston repair facility to be ready to receive the WPR, complete the repair, and ship it back to Venezuela as quickly as possible.  (Id. ¶¶ 46-47.)  Although Brant represented in an email that the WPR was being shipped back, APS never received the tool and thus was never able to attempt to repair it. (Id. ¶¶ 48-49.)  In May 2013, APS was notified of an issue with a second WPR.  (Id. ¶ 50.)  The tool was inspected in Venezuela by an APS field engineer, who determined that any damage to the WPR had been caused by use of the tool beyond its performance specifications.  (Id. ¶¶ 51-58.)  Although APS attempted to honor its warranty by offering to refund the full amounts of payments made by Brant in connection with the damaged WPR – less amounts attributable to items not returned or damaged beyond repair – Brant never returned the second WPR to APS, and thus never triggered any warranty rights it had under the MPA.  (Id. ¶¶ 50, 59-60.)

Brant ceased making payments pursuant to the Amendment after June 2013, resulting in a default.  (Compl. ¶ 23; Answer ¶ 23.)  In late August 2013, APS sent Brant a notice of default, and demanded immediate payment of $1,260,028.09, plus attorney's fees of $1,240. (Compl. ¶ 24; Answer ¶ 24.)  APS also claims that Brant owes $139,238.78 in "Aged Receivables" for goods and engineering services provided by APS under the MPA.  (Compl. ¶ 26.)  Brant has failed to respond to APS' demand for payment.  (Compl. ¶ 25; Answer ¶ 25.)

<u>D</u>ISCUSSION

<u>Legal Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material factual dispute, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986), and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" <u>Marvel Entertainment, Inc. v. Kellytoy (USA), Inc.</u>, 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting <u>Heublein v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993)). When a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (internal quotation marks and citation omitted). The non-moving party must "present affirmative evidence," rather than "rest upon mere allegation or denials." <u>Id.</u> at 256-57. "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." <u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998).

A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (internal

quotation marks and citation omitted).

Local Civil Rule 56.1

Subsection (a) of the Southern District of New York's Local Civil Rule 56.1 provides that, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Subsection (b) of Rule 56.1 provides that a party opposing a summary judgment motion must supply its own statement of facts that includes "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party [of] . . . material facts as to which it is contended that there exists a genuine issue to be tried."  Subsection (d) of the Local Rule requires that each "statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to [admissible] evidence."  Each numbered paragraph in the statement of material facts set forth by the moving party is to be deemed admitted for the purposes of the motion "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civil Rule 56.1(c).

APS has submitted a thorough statement of material facts, consisting of 63 paragraphs, complete with citations to relevant, admissible evidence.  (See Docket Entry No. 47 and Exs. 1-30.)  In response, Brant has offered a six-paragraph counter-statement that contains no "correspondingly numbered paragraph[s] responding to each numbered paragraph" of APS' statement, nor corresponding citations to admissible evidence as required by Local Civil Rule 56.1.  (See Docket Entry No. 56.)  Instead, Brant provides a list of affidavits and exhibits,

offered without context, and a few conclusory statements that do not correspond specifically to any of the numbered paragraphs in APS' submission. (<u>See id.</u>) The extent of effort expended by Brant to engage APS' specific factual proffers in its briefing is a single sentence captioned "Preliminary Matter" in which Brant asserts that it "takes issue with APS' statements through out [<u>sic</u>] its filing wherein it refers to its Statement of Material Facts as being 'Undisputed' as some of them are disputed." (<u>See</u> Brant Oilfield Management & Sales, Inc.'s Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment on All Counts ("Brant Memo"), at p. 7.) A conclusory statement such as this, coupled with Brant's utterly deficient counter-statement, is insufficient to put the facts in APS' Rule 56.1 statement in dispute. Thus, for the purposes of this motion, the Court deems the facts proffered by APS in its Rule 56.1 statement to be admitted. <u>See</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted"); <u>see also</u> <u>American Medical Ass'n v. United HealthCare Corp.</u>, No. 00CV2800-LMM, 2007 WL 1771498, at *2 (S.D.N.Y. June 18, 2007) ("When parties decline to file Rule 56.1 statements, or when the statements they file lack citations or are in some other way deficient, courts are 'free to disregard' the assertions therein.") (citing <u>Holtz</u>, 258 F.3d at 73); <u>Galasso v. Eisman, Zucker, Klein & Ruttenberg</u>, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (moving party's Rule 56.1 "facts will be deemed admitted unless the party opposing the motion submits his own Rule 56.1 Statement, which <u>specifically</u> <u>denies</u> any controverted assertions of fact made by the movant") (emphasis supplied).

APS' Breach of Contract Claims

APS seeks summary judgment on its claims that Brant has breached the terms of the MPA, as well as the related Addendum and Amendment.  (See Compl. ¶¶ 27-41.)  In its Answer, Brant admits APS' allegations that: (1) it has failed to pay any of the outstanding $1,260,028.09 allegedly due on the balance for the drilling equipment; (2) it has failed to pay the $137,747.28 allegedly due for the Aged Receivables; and (3) it "materially breached the contract for the sale of goods."  (See Compl. ¶¶ 31, 33, 41; Answer ¶¶ 31, 33, 41; Pl. 56.1 St. ¶ 2.)[3]  Thus, because it is undisputed that Brant has breached the contract between itself and APS by failing to pay APS the amounts that it seeks to recover pursuant to the MPA, and because APS has proffered uncontroverted evidence of the terms of the MPA, as well as the payments that Brant has failed to make, APS is entitled to summary judgment on each of its breach of contract claims unless Brant has demonstrated that there is a genuine issue of material fact with respect to a relevant affirmative defense.  (See Compl. ¶¶ 27-41; see also generally Pl. 56.1 St.)  This Brant has failed to do.

Brant's Affirmative Defenses and Counterclaims

Brant's Answer asserts eight affirmative defenses, captioned: Discharge; Breach of Contract, Breach of UCC: Implied Warranty of Fitness; Breach of UCC: Express Warranty of Goods, Breach of UCC: Implied Warranty of Merchantability; Negligent Product Design, Negligent Manufacture, and Offset.  (See generally Answer.)  With the exception of

---

[3]      In light of Defendant's admission that its nonpayment has rendered it in material breach of the MPA, the Court need not address Plaintiff's Count Four Cause of Action for unjust enrichment or its Count Five Cause of Action for  quantum meruit recovery.  (See Compl. ¶¶ 42-55.)

"Discharge," each of these Affirmative Defenses is alternatively pleaded as a counterclaim.[4]  It is of no consequence, however, whether these proffered theories are classified as affirmative defenses or counterclaims; under either scenario, Brant bears the burden of proof on each.  See, e.g., Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001) (noting that defendant bears the burden of proof on affirmative defenses); V.S. Intern., S.A. v. Boyden World Corp., 862 F. Supp. 1188, 1195 (S.D.N.Y. 1994) ("In this breach of contract action, plaintiffs have the burden of proving the material allegations in the complaint by a fair preponderance of the evidence. Similarly, with respect to the counterclaim asserted herein, defendant bears the same burden.").

        "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense – on which the defendant bears the burden of proof at trial – a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case."  F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (internal quotation marks and citation omitted).  The same is true of APS' burden with respect to Brant's counterclaims.  See, e.g., Repp v. Webber, 892 F. Supp. 552, 559 (S.D.N.Y. 1995) (plaintiff bears the "burden of demonstrating the absence of any genuine issues of material fact with respect to defendants' counterclaims.").  Because APS has effectively demonstrated the absence of any genuine issue of material fact with respect to Brant's affirmative defenses and counterclaims, it is entitled to judgment as a matter of law dismissing each of them.

---

[4]      See Brant Memo at p. 7, "Brant's answer maintains nine affirmative defenses that are also plead as counter claims [sic].  The factual basis of these affirmative defenses and counterclaims are identical."  Although Brant claims to have asserted nine affirmative defenses, only eight are proffered in the body of its Answer.

A.  *Discharge*

Brant's affirmative defense of "Discharge" is framed as a claim of material breach, asserting that "APS's own material breach of the contract caused its damages," and implying that such breach excuses its own performance under the MPA.  (See Answer ¶ 58.) The Second Circuit has noted that, "for a breach of contract to excuse performance by a counterparty, that breach must be material."  Spector v. Board of Trustees of Community Tech Colleges, 316 F. App'x 18, 21 (2d Cir. 2009) (internal quotation marks and citation omitted).  As the basis of this breach claim, Brant asserts that APS failed to honor its warranty by not repairing or replacing certain equipment.  (See Answer ¶ 58.)  However, because Brant has not provided any competent evidence demonstrating that APS failed to honor its warranty, Brant has failed to raise a disputed issue of fact with regard to a material breach of the MPA.

Due to Brant's failure to specifically controvert APS' Rule 56.1 Statement, the Court deems Brant to have admitted that APS delivered functional and conforming goods within the parameters of the MPA (see Pl. 56.1 St. ¶¶ 11-12) and that APS repaired and/or replaced all equipment that was returned by Brant in accordance with the warranty in the MPA.  (See id. ¶¶ 42-62).  Furthermore, Brant has proffered no competent evidence raising any genuine issue of material fact as to any of these matters.  (See generally Def. Rule 56.1 Statement.)  Neither Brant's generalized assertions of disagreement with APS' factual proffers, which APS has supported by evidentiary submissions, nor the litany of equipment repair and inspection issues set forth in the declaration of Brant's principal, who also purports to opine as an expert on flaws in APS' technical specifications, constitutes competent, non-conclusory evidence sufficient to frame a genuine dispute of material fact as to APS' performance of its duties under the relevant contracts.  The closest that Brant comes is a reference – provided without any context – to an

affidavit submitted by Hubbard in which he states that "APS responded with they would be happy to sell us another suite of tools, but they would not provide a replacement for the failed tools."  (See id., Ex. 2 at ECF p. 12.)  The affidavit, however, cites no supporting evidence, and Hubbard's conclusory statement is not inconsistent with the material facts that have been deemed admitted regarding non-replacement of tools that were not returned to APS as required by the contract.  See Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-90 (1990) ("The object of [Federal Rule of Civil Procedure 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")).  Thus, because APS has demonstrated the clear absence of any material fact with respect to Brant's "Discharge" argument, it is entitled to summary judgment dismissing this affirmative defense.

### B.  Breach of the Express Warranty

The Court has already determined that Brant has failed to demonstrate that APS breached the express warranty contained within the MPA, finding that Brant has not presented any evidence raising a material issue of fact with respect to APS' contract compliance.  (See Discussion supra.)  Although Brant argues that the warranty failed of its "essential purpose" (see Brant Memo at pp. 16-18), it has offered no facts upon which a rational finder of fact might reach this conclusion.  Furthermore, although Brant claims that the MPA's limitations on the express warranty and consequential damages are unconscionable (see id. pp. 15-16), it provides no relevant legal argument whatsoever with respect to the unconscionability standard or how APS' actions might satisfy that standard.  Nor does Brant make any relevant factual proffer upon which a rational finder of fact might base a conclusion that the terms of the express warranty were unconscionable.  In light of this, the Court grants APS' request to dismiss Brant's counterclaim for "Breach of UCC Express Warranty."

### C.  Negligent Product Design and Negligent Manufacture

In its opposition briefing, Brant abandons its two negligence-based counterclaims, indicating its agreement with APS' position that they are barred by Connecticut's economic loss doctrine.  (See Brant Memo at p. 8.)  "The economic loss doctrine prohibits recovery in tort where the basis for the tort claim arises from violation of a contract and damages are limited to purely economic losses."  Diamond Contractors, Inc. V. IPT, LLC, No. 3:12CV317-WWE, 2013 WL 331235, at *3 (D. Conn. Jan. 25, 2013).  The Court agrees that the economic loss doctrine is applicable to these counterclaims and grants APS' request to dismiss them.

### D.  Breach of Implied Warranties

Brant argues that, because APS signed the version of the MPA that included Brant's surreptitious alterations, APS' warranty disclaimers – which include disclaimers of any implied warranties – are ineffectual.  (See Brant Memo pp. 8-12.)  Even if the Court were to agree that the implied warranties were not effectively disclaimed, Brant has proffered no competent non-conclusory evidence upon which a rational finder of fact could find a breach of any implied warranty.  Brant's second counterclaim asserts that many of the products delivered by APS began to fail immediately, constituting a breach of the UCC's implied warranty of fitness for a particular purpose.  (See id. ¶¶ 121-24.)  Brant's fourth counterclaim asserts essentially the same facts, claiming that the same failures constituted a breach of the UCC's implied warranty of merchantability.  (See Answer ¶ 126.)  Brant has not, however, marshaled sufficient evidence with respect to either of these claims to defeat APS' summary judgment motion.

"To recover [for breach of the implied warranty of merchantability], a plaintiff must prove (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, and (3) injury and damages to the plaintiff or his property (4) [were] caused approximately [sic] and in fact by the defective nature of the goods, and (5) [that] notice [was given] to the seller of

injury." <u>Standard Structural Steel Co. v. Bethlehem Steel Corp.</u>, 597 F. Supp. 164, 187 (D.

Conn. 1984) (internal quotation marks and citation omitted).  In cases such as this, where "the

particular purpose for which goods are to be used coincides with their general functional use,

[the] implied warranty of fitness for a particular purpose merges with the implied warranty of

merchantability."  <u>Beech Aircraft Corp. v. Flexible Tubing Corp.</u>, 270 F. Supp. 548, 561-62 (D.

Conn. 1967).  Brant dedicates a portion of its brief to listing various "Tool Failures" that it has

experienced, presumably with respect to tools supplied by APS, though this is difficult to

confirm as Brant has provided only sparse citations to record evidence.  (<u>See</u> Brant Memo at p.

18-22.)  Brant also points once again to the Hubbard affidavit, in which numerous tool failures

are alleged (<u>see</u> Def. Rule 56.1 Statement, Ex. 2), a series of e-mail exchanges between Brant

and APS employees which Brant claims memorializes several mechanical issues (<u>see id</u>, Exs. 8-

9, 11) and a report running longer than 100 pages drafted by an APS field engineer that

purportedly catalogues several technical problems attributable to tools supplied by APS.  (<u>See</u>

<u>id.</u>, Ex. 5.)

          While these submissions may reflect the state of affairs with regard to various

tool failures – a matter difficult to confirm given Brant's failure to provide any context or

explanation for them – they are not enough to establish a breach of the implied warranty of

merchantability.  Brant has submitted no non-conclusory evidence demonstrating that any of the

damages which it alleges were the proximate result of the tool failures, thereby failing to prove

an essential element of its implied warranty claim.  <u>See</u> <u>Standard Structural Steel</u>, 597 F. Supp.

at 187.  While Brant claims in its Answer to have suffered "damages for its loss of commission .

. . in excess of One Million dollars," (Answer ¶ 133), it provides no breakdown and no evidence

in support of this claim.  Without demonstrating damages, Brant cannot raise an issue of material

fact with respect to its implied warranty claims.  See, e.g., Omega Engineering, Inc. v. Eastman Kodak Co., 30 F. Supp. 2d 226 (D. Conn. 1998) (dismissing plaintiff's breach of warranty of merchantability and warranty of fitness for a particular purpose claims for failing to offer proof of damages suffered).  APS has thus effectively demonstrated Brant's failure to proffer competent evidence raising a genuine issue of material fact with respect any damages suffered by Brant and the Court grants APS' motion insofar as it seeks dismissal of Brant's implied warranty counterclaims.[5]

### E.  Venezuelan Customs Matter

One of the more curious aspects of Brant's counterclaims is a section captioned "Venezuelan Coustom's Issue" [sic], in which Brant claims that it was fined approximately $500,000 by the Venezuelan government due to APS' "egregious" conduct of "plac[ing] commercial invoices and other documentation within the closed shipping crates contrary to the industry norms, accepted business practices and contrary to any prior shipping that they had previously done."  (Answer ¶¶ 106-16.)  Brant asserts it is entitled to approximately $500,000 in damages from APS.  (See id. ¶ 116.)

Brant has proffered no non-conclusory evidence of the supposed $500,000 fine levied by customs, nor any non-conclusory evidence linking such a fine to any action on the part of APS.[6]  Furthermore, it is undisputed that "[l]iability for customs issues was expressly disclaimed

---

[5]   For substantially the same reasons, the Court dismisses Brant's breach of contract counterclaim.  See Alliance Group Services, Inc. v. Grassi & Co., 406 F. Supp. 2d 157, 163 (D. Conn. 2005) (under Connecticut law, "[t]o state a claim for breach of contract, the plaintiff must show (1) the formation of an agreement, (2) performance by one party, (3) a breach of the agreement by the other party, and (4) damages.").

[6]   Hubbard merely asserts in his declaration that "[b]ecause of the conflicting documents and the disclosure of financing terms Seniat assed [sic] a $500,000.00 fine."  (See Hubbard Decl., Docket Entry No. 55-2 at ECF p. 7.)

in the MPA." (Pl. Rule 56.1 Statement ¶ 41.) In light of APS' uncontroverted evidence on this point, the Court grants APS' motion to dismiss this aspect of Brant's counterclaims.


CONCLUSION

For the foregoing reasons, APS Technology, Inc.'s motion for summary judgment is granted in its entirety. Judgment will be entered in favor of APS for the unpaid purchase and receivable amounts, plus contractual interest, and Brant's counterclaims are dismissed with prejudice. APS is directed to submit a proposed judgment on ten days' notice to Brant. Any application for an award of attorneys' fees is to be made in accordance with Federal Rule of Civil Procedure 54(d).

This Memorandum Opinion and Order resolves docket entry number 45.

SO ORDERED.

Dated: New York, New York
       September 29, 2015

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              United States District Judge